UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────

PAUL RAMOS,

                              Plaintiff,

                                                          9:17-CV-0259
          v.                                              (BKS/CFH)

NEW YORK STATE; et al.,

                              Defendants.

───────────────────────────────

APPEARANCES:

PAUL RAMOS
Plaintiff, pro se
15-B-0310
Washington Correctional Facility
Box 180
Comstock, NY 12821

BRENDA K. SANNES
United States District Judge

**DECISION and ORDER**

**I.    INTRODUCTION**

        Plaintiff Paul Ramos filed his pro se complaint in this action in March 2017 seeking to

assert claims arising out of his confinement at Mid-State Correctional Facility ("Mid-State

C.F.").  *See* Dkt. No. 1.

        In a Decision and Order filed May 16, 2017, this Court granted plaintiff's in forma

pauperis application and reviewed the sufficiency of his claims in accordance with 28 U.S.C.

§ 1915(e) and 28 U.S.C. § 1915A.  Dkt. No. 8 ("May Order").  On the basis of that review,

and for the reasons stated in the May Order, the Court concluded that the complaint failed to

state one or more claims for the violation of plaintiff's constitutional rights cognizable under

Section 1983. *Id*. at 12. As a result, the complaint was dismissed and plaintiff was afforded the opportunity to submit an amended complaint if he wished to avoid dismissal of this action. *Id*.

Plaintiff duly filed an amended complaint, which is before the Court for review. *See* Dkt. No. 12 ("Am. Compl.").

## II.    SUFFICIENCY OF THE AMENDED COMPLAINT

Plaintiff seeks relief for the alleged violation of his constitutional rights arising out of a period of restricted confinement in a "dry cell" at Mid-State C.F. in order to be checked for contraband. *See generally* Am. Compl.[1] As alleged in the amended complaint, Sgt. "John Doe" ordered this confinement on March 22, 2015, following a visit. *Id*. at 2. Lt. "John Roe" was on duty as the Watch Commander, and "authorized the placement of Plaintiff in the 'Special Watch' status." *Id*. "During the period of isolation, the Plaintiff voided approximately 12 negative defecations and was not removed from this status." *Id*. Plaintiff remained confined in a "dry cell" for twenty-six days, during which time he was not "afforded a shower, use of a toothbrush and toothpaste, nor wash cloth." *Id*. Plaintiff's confinement beyond seven days was not authorized by "the Superintendent or his designee" as required by DOCCS Directive 4910, nor were there any other "statutorily allowable extenuations before the lapsing of seven days, to justify the disregard of this Directive." *Id*.

Plaintiff also complains of an incident involving C.O. Rose which occurred during his

---

[1] DOCCS Directive 4910 states that when there is "probable cause" to believe that the inmate has either ingested a contraband item or inserted a contraband item into the rectal cavity," an inmate can be placed on temporary isolation for "a period not to exceed 48 hours," unless special circumstances exist which extend that period to "up to seven days with the written approval of the Superintendent or designee." *Id*., Sec. IV(J). Generally speaking, the water supply is turned off in a "dry cell" so that an inmate's bowel movements can be monitored and inspected for contraband. *See* DOCCS Directive 4910(J); *McNair v. Sgt. Jones*, No. 01 Civ. 3253, 2002 WL 31082948, at *2 (S.D.N.Y. Sept. 18, 2002).

confinement.  *See* Am. Compl. at 2.[2]  As alleged, C.O. Rose denied plaintiff's request for a bed pan and told plaintiff to "hold it I get off in ten minutes."  *Id.*  Plaintiff was unable to wait and defecated on himself and the bed.  *Id.*[3]

Based upon the foregoing, plaintiff claims that his confinement in a "dry cell" for twenty-six days violated his rights protected under the Eighth and Fourteenth Amendments, and that C.O. Rose subjected him to unconstitutional conditions of confinement.[4]  In addition to C.O. Rose, Sgt. "John Doe," and Lt. "John Roe," the amended complaint names seventy-eight defendants who are identified as the Area Supervisors and Watch Commanders who "authorized the continuance of Plaintiff in this 'Special Watch' status" (referred to herein as the "Area Supervisors and Watch Commanders").[5]

Upon review, and for the reasons set forth in the May Order, the Court concludes that the amended complaint does not state a cognizable claim against C.O. Rose for having denied plaintiff a bed pan.  *See* May Order at 8-10.  No new factual allegations regarding this "single unfortunate and undeniably unpleasant incident," *id.* at 9, are set forth in the amended complaint, and there is no basis upon which the Court could conclude that C.O. Rose knew of and disregarded an excessive risk to plaintiff's health and safety.  *Id.*

---

[2]  Plaintiff does not provide the date of this incident.  *See* Am. Compl.  In his original complaint, plaintiff stated that the incident occurred on March 27, 2015.  Compl. at 5.

[3]  Plaintiff further alleges that the officer(s) on the next shift did not allow him to clean himself or his cell for approximately six hours.  Am. Compl. at 2.

[4]  While plaintiff also refers to the Fourth Amendment, *see* Am. Compl. at 1, there are no facts alleged in the amended complaint which plausibly suggest that his rights protected under this Amendment were violated.

[5]  Original defendants Governor Cuomo, DOCCS Acting Commissioner Annucci, and Mid-State C.F. Supt. "Doe" are not named as defendants in the amended complaint and are not parties to this action.  *See* Am. Compl.  Although New York State is named in the caption of the amended complaint, plaintiff's claims for money damages against New York State were dismissed with prejudice and it is not a proper party.  *See* May Order at 11-12.

The Court has also considered the sufficiency of plaintiff's claims that his prolonged confinement in a "dry cell" was unconstitutional. As alleged in the amended complaint, this confinement was unusually restrictive, lasted well beyond its intended duration, and was not authorized by supervisory personnel. Am. Compl. at 2. Significantly, whereas this claim was asserted only against C.O. Rose in the original complaint, the amended complaint names the Area Supervisors and Watch Commanders as defendants.

The Eighth Amendment "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), but prisons nevertheless "must provide humane conditions of confinement," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "A claim . . . for violations of the Eighth Amendment requires (1) an 'objectively, sufficiently serious . . . denial of the minimal civilized measure of life's necessities' and (2) a 'sufficiently culpable state of mind' on the part of the responsible official." *Willey v. Kirkpatrick*, 801 F.3d 51, 66 (2d Cir. 2015) (quoting *Farmer*, 511 U.S. at 834). "Unsanitary conditions, especially when coupled with other mutually enforcing conditions, such as poor ventilation and lack of hygienic items (in particular, toilet paper), can rise to the level of an objective deprivation." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (citing *Willey*, 801 F.3d at 66-68).[6] "While *Willey* acknowledged that 'there are many exposures of inmates to unsanitary conditions that do not amount to a constitutional violation,' the Court rejected a 'bright-line durational requirement for a viable unsanitary- conditions claim' or a 'minimal level of grotesquerie required' before such a claim could be brought." *Id*. at 30-31 (quoting *Willey*, 801 F.3d at 68).

---

[6] The *Darnell* Court reversed the grant of summary judgment dismissing claims by pretrial detainees that they had been subjected to unconstitutional conditions of confinement, including unsanitary conditions. *See Darnell*, 849 F.3d at 31.

To state a claim under Section 1983 for the denial of procedural due process, a plaintiff must allege both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). "[A] prisoner's restricted confinement within a prison does not give rise to a liberty interest, warranting procedural due process protection, unless the conditions 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Sealey v. Giltner,* 197 F.3d 578, 583 (2d Cir. 1999) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)).[7]

"It is well established that the administrative classification of prisoners does not give rise to a protectable liberty interest under the Due Process Clause itself." *Greene v. Garcia*, No. 12-CV-4022, 2013 WL 1455029, at *5 (S.D.N.Y. Mar. 26, 2013) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). "Because prisoners have no liberty interest in being free from classification, they are also not entitled to due process before they are classified or prior to the imposition of conditions necessitated by their classification." *Walker v. Shaw*, No. 08-CV-10043, 2010 WL 2541711, at *5 (S.D.N.Y. June 23, 2010). As the Second Circuit has recognized, however, to ensure that a facility does not use restrictive confinement classification as a pretext to commit an inmate indefinitely, "the Due Process Clause of the Fourteenth Amendment mandates that prison officials periodically review whether an inmate continues to pose a threat to the facility." *Proctor v. LeClaire*, 846 F.3d 597, 601 (2d Cir.

---

[7] Atypicality in a *Sandin* inquiry is normally a question of law. *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey,* 197 F.3d at 585.

5

2017).[8]  Procedural due process permits only an evaluation of whether the method used for making a determination that an inmate should be placed on restricted confinement is sufficient and not the substance of the decision itself.  *Id*. at 608.  In addition, courts must be mindful of the context in which these claims arise and the deference owed to prison officials in carrying out their daily tasks.  *Id*.

Upon review and with due regard for plaintiff's status as a pro se litigant, the Court concludes that the initial determinations by Sgt. "John Doe" and Lt. "John Roe" regarding the need to isolate plaintiff in a "dry cell" do not give rise to cognizable claims against these officers.  However, because the amended complaint plausibly suggests that the conditions of plaintiff's confinement were objectively "serious," and because he alleges that he was confined for twenty-six days without review and authorization, at this early stage of the case and interpreting the amended complaint liberally, the Court finds that the amended complaint plausibly suggests that his constitutional rights were violated.  As a result, plaintiff's Eighth and Fourteenth Amendment claims arising from his confinement in a "dry cell" for twenty-six days survive initial review and require a response from the Area Supervisors and Watch Commanders.  This is not a ruling on the merits and the Court expresses no opinion as to whether these claims can survive a properly filed dispositive motion.

Because the names of the Area Supervisors and Watch Commanders are not known to plaintiff, service of process cannot be effected on them unless and until they have been identified by name.  The Second Circuit has acknowledged the difficulty that pro se litigants,

---

[8]  In *Proctor*, the Second Circuit addressed confinement on Administrative Segregation status of a convicted prisoner in DOCCS custody.  *Proctor*, 846 F.3d at 601.  As described by the Court, "Ad Seg" removes an inmate from the general population when he "pose[s] a threat to the safety and security of the [prison] facility." *Id*.

6

and in particular, incarcerated plaintiffs, face in identifying defendants without assistance. *See Valentin v. Dinkins*, 121 F.3d 72, 75 (2d. Cir. 1997) (per curiam) (finding that incarcerated plaintiff was entitled to discovery in order to ascertain identity of unknown defendant).  Rather than dismissing an action due to a plaintiff's failure to identify the defendant, "a district court may pursue any course that it deems appropriate to a further inquiry into the identity of [an unnamed officer]." *Id.*; *see also Joseph v. Conway*, 567 Fed. App'x 56, 60 (2d Cir. 2014) (summary order); *Murray v. Pataki*, 378 Fed. App'x 50, 52 (2d Cir. 2010) (summary order).

In accordance with *Valentin*'s directive that district courts must assist pro se incarcerated litigants to ascertain the identities of unknown defendants, the Court requests that the New York State Attorney General's Office attempt to ascertain the full names of the Mid-State C.F. Area Supervisors and Watch Commanders responsible for plaintiff's confinement in a "dry cell" during the period March 23, 2015 through April 16, 2015, as well as the addresses where these individuals can be served with process.  The Attorney General's Office need not undertake to defend or indemnify these individuals at this juncture.

The New York State Attorney General's Office is requested to produce the information specified above, to the extent that it can, within thirty (30) days of the filing date of this Decision and Order.  Information regarding these individuals should be sent to the Clerk of the Court for the Northern District of New York, and to plaintiff at his address of record.  Once this information is provided, the Clerk shall return this file to the Court for further review.

## III.    CONCLUSION

**WHEREFORE**, it is hereby

7

**ORDERED** that the amended complaint (Dkt. No. 12) is **ACCEPTED** for filing and is the operative pleading in this action; and it is further

**ORDERED** that the Clerk shall (i) terminate New York State, Andrew Cuomo, Anthony Annucci, and Supt. "Doe" as defendants; and (ii) revise the docket to add Sgt. "John Doe," Lt. "John Roe," and the unnamed Area Supervisors and Watch Commanders as defendants; and it is further

**ORDERED** that plaintiff's Eighth and Fourteenth Amendment claims arising out of his confinement in a "dry cell" for twenty-six days **SURVIVE** initial review and require a response from the Area Supervisors and Watch Commanders; and it is further

**ORDERED** that plaintiff's remaining claims are **DISMISSED without prejudice** in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that the Clerk shall terminate C.O. Rose, Sgt. "John Doe," and Lt. "John Roe" as defendants; and it is further

**ORDERED** that to the extent possible, the New York State Attorney General's Office is requested to produce the information specified above regarding the unidentified Area Supervisors and Watch Commanders **within thirty (30) days** of the filing date of this Decision and Order; upon receipt of this information, the Clerk of the Court shall return the file to the Court for further review; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action shall bear the case number assigned to this action and shall be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S.

Clinton St., Syracuse, New York 13261-7367. Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. Motions must comply with Local Rule 7.1 of the Northern District of New York; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. Plaintiff must promptly notify the Clerk's Office and opposing counsel (in writing) of any change in his address; his failure to do so may result in the dismissal of this action; and it is further

ORDERED that the Clerk shall serve a copy of this Decision and Order on the plaintiff; and it is further

ORDERED that the Clerk shall provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**IT IS SO ORDERED.**

Dated:   November 30, 2017
             Syracuse, NY

Brenda K. Sannes
U.S. District Judge