**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

PAUL RAMOS,

                         Plaintiff,              No. 9:17-CV-0259
                                                           (BKS/CFH)

      v.

NEW YORK STATE, ET AL.,

                        Defendants.

---

**APPEARANCES:**                           **OF COUNSEL:**

Paul Ramos
15-B-0310
Clinton Correctional Facility - Annex
P.O. Box 2002
Dannemora, New York 12929
Plaintiff pro se

Attorney General for the                 ERIK BOULE PINSONNAULT, ESQ.
   State of New York                        Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

      Plaintiff pro se Paul Ramos ("plaintiff"), an inmate who was, at all relevant times,

in the custody of the New York Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants

Captain ("Capt.") Thomas Short, Capt, K.E. Adamik, Capt. L.R. Goppert, Sergeant

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

("Sgt.") Steven Walrath, Deputy Superintendent of Security ("DSS") Joseph Ward, Lieutenant ("Lt.") Michael Hawk, and Superintendent ("Supt.") John Colvin — who, at all relevant times, were employed at Mid-State Correctional Facility ("Mid-State") — violated his rights under the Eighth and Fourteenth Amendments.  See Dkt. No. 12 ("Am. Compl.").  Presently pending before the Court is defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  Dkt. No. 37.  Plaintiff opposed defendants' motion, and defendants filed a reply.  Dkt. Nos. 44, 45.  For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

### A. Plaintiff's Recitations of the Facts

On March 22, 2015, a corrections officer requested that plaintiff be assigned to a "dry cell" on "special watch" status at Mid-State to be checked for the suspected presence of contraband.  Am. Compl. at 1-2.  A lieutenant and watch commander authorized plaintiff's placement on "special watch" status.  Id. at 2.  Plaintiff remained in the dry cell from March 22, 2015 until April 16, 2015.  Id.  Plaintiff contends that he was unable to address his personal hygiene while on "special watch" status, and that he was not properly released from the "dry cell" pursuant to DOCCS Directive 4910.  Id. at 1-2.

### B. Defendants' Recitation of the Facts

In support of this Motion for Summary Judgment, defendants filed a Statement of

Material Facts.[2]  Plaintiff was incarcerated at Mid-State from February 19, 2015 through June 4, 2015.  Dkt. No. 37-3 ¶ 5.  In the underlying action, plaintiff contends that defendants violated his Eighth and Fourteenth Amendment rights when they confined him in a "dry cell" for twenty-six days while he was on special watch to confirm the presence of drugs secreted in his body.  Id. ¶ 3.  On his arrival, plaintiff attended an orientation program that included an explanation on how to utilize the Inmate Grievance Program ("IGP") to file and appeal grievances.  Id. ¶ 6.  On April 27, 2015, plaintiff sent a letter entitled "Inmate Grievance Request" to Mid-State's Inmate Grievance Resolution Committee ("IGRC") regarding a Tier III misbehavior report charging him with destruction of state property (116.10) and unhygienic acts (118.22).  Id. ¶ 7.  In his grievance, plaintiff alleged that non-party corrections officer ("C.O.") Rose presented a false description of the incident underlying the March 27, 2015 misbehavior report.  Id. ¶

---

[2]  Local Rule 7.1(a)(3) states:

> Summary Judgment Motions
>
> Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.
>
> The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R.  7.1(a)(3).

3

8. The grievance did not contain a complaint that plaintiff had been confined in a dry cell for an extended period of time or that his drug watch continued without necessary authorization. Id. This grievance was the only correspondence Mid-State's IGP supervisor received from plaintiff. Id. ¶ 9.

On June 4, 2015, plaintiff transferred from Mid-State to Cayuga Correctional Facility ("Cayuga"). Dkt. No. 37-3 ¶ 11. Plaintiff was incarcerated at Cayuga from June 5, 2015 through June 24, 2015. Id. While at Cayuga, plaintiff did not appeal any grievances to CORC prior to March 1, 2018 – the date he commenced this action in federal court. Id. ¶ 14.

Although Supt. Colvin is named in the caption of the amended complaint, plaintiff does not allege that he committed wrongdoing. Dkt. No. 37-3 ¶ 17.

## II. Discussion[3]

### A. Legal Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v.

---

[3] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

4

Catrett, 477 U.S. 317, 323 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. See id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions

5

> themselves do not "suggest," . . . that we should not
> "excuse frivolous or vexatious filings by pro se litigants," . . .
> and that pro se status "does not exempt a party from
> compliance with relevant rules of procedural and
> substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

## B. Exhaustion

Defendants argue that plaintiff failed to exhaust his administrative remedies prior to commencing this action. See Dkt. No. 37-1 ("Def. Mem. of Law") at 9-14. Plaintiff contends that he has exhausted his administrative remedies. Dkt. No. 44-1 ("Pl. Opp.") at 7-9. Specifically, plaintiff contends that (1) he did not have access to writing materials while in his dry cell; and (2) he authored grievances concerning the dry cell confinement, but that he failed to receive a response from the Mid-State IGRC. See id.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524. To exhaust administrative remedies, the inmate must

6

complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. See Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, __ U.S. __,136 S. Ct. 1850, 1862 (2016). Thus, the "special circumstances" exception in Hemphill v. New York, 680 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).[4]

Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme

---

[4] In Williams v. Priatno, the Second Circuit debated Ross's effect on Hemphill's estoppel exception. See Williams, 829 F.3d at 123. The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." Id. (citing Ross, 136 S. Ct. at 1858-59).

7

might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### 1. Did Plaintiff Exhaust his Administrative Remedies?[5]

There is no dispute that, on April 27, 2015, plaintiff submitted a document to the Mid-State IGRC entitled "Inmate Grievance Request," which challenged a Tier III misbehavior report charging plaintiff with destruction of property (116.10) and unhygienic act (118.22). See Dkt. No. 37-6 ("Tapia Decl.") ¶ 15; Pl. Opp. at 5. This grievance, which the Mid-State IGRC found to be untimely, sought plaintiff's placement back into the general population, as well as the expungement and dismissal of the misbehavior report. Id. at 9. However, this grievance does not challenge the duration of plaintiff's confinement on "special watch," or the conditions of that confinement. See id. Plaintiff filed a second grievance (CAY-17657-15) while housed at Cayuga, alleging that staff had restricted visitation between he and his fiancee. Dkt. No. 37-7 ("Ganey

---

[5] First, the inmate must file a complaint with an IGP clerk within twenty-one days of the alleged incident. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii). Parties do not dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5.

Decl.") ¶ 12.  Grievance CAY-17657-15 does not reference any conduct that occurred while plaintiff was housed at Mid-State.  See id. at 6.  Mid-State IGP Supervisor Christopher Tapia declared that "Mid-State IGP office has no record of any grievance [filed] by plaintiff concerning his [ ] claims in this case, which are based on his continued confinement in a dry cell at Mid-State while on a drug watch."  Tapia Decl. ¶ 17.  Similarly, Cayuga IGP Supervisor Shawn Ganey declared that plaintiff never made a request to file a late grievance at Cayuga concerning his confinement in a dry cell at Mid-State.  Ganey Decl. ¶ 15.

In response, plaintiff contends that he submitted a grievance dated April 26, 2015 concerning the surviving claims in this action.  Pl. Opp. at 5.  Plaintiff proffers a copy of the alleged grievance, which, in part, challenges the length of his confinement in the dry cell, as well as the conditions of that confinement, including his inability to shower, brush his teeth, or correspond with his friends and family for three and a half weeks.  Dkt. No. 44-2 at 4.  Plaintiff states that he received one response from the Mid-State IGP on May 5, 2015 stating that he had filed his grievances too late.  Pl. Opp. at 5.  Plaintiff further claims that when he arrived at Cayuga on June 5, 2015, he "made several attempts in writing to Cayuga's Inmate Grievance Resolution Committee ('IGRC') [i]n reference to his grievance complaint's [sic] that he filed at Mid-State."  Id.  Plaintiff does not proffer copies of this correspondence.  Plaintiff did not receive a response to his alleged attempts at communication.  Id.

Even if the undersigned were to assume that plaintiff properly submitted a grievance challenging the duration and conditions of his confinement in the dry cell from

9

March 22, 2015 until April 16, 2015, and that the Mid-State IGP failed to respond to that grievance, plaintiff's claims still must fail. It is well-settled that where an inmate does not receive a response to a grievance, the inmate must appeal to the next level of review notwithstanding the lack of response at the first level of review. See Khudan v. Lee, No. 12-CV-8147, 2015 WL 5544316, at *5 (S.D.N.Y. Sept. 17, 2015) (dismissing the plaintiff's complaint where the plaintiff failed to appeal to the next level of review after failing to receive a response on his filed grievance). Thus, even if an inmate suspects that his grievances were discarded, he or she must still appeal the grievance despite the lack of response at the first step of review. Chiarappa v. Meyers, No. 09-CV-607, 2013 WL 6328478, at *5 ( W.D.N.Y. Dec. 5, 2013) ("[E]ven if plaintiff attempted unsuccessfully to file a grievance in a timely manner, the lack of a response does not relieve him of the requirement to timely appeal the grievance through all three steps of the grievance process."); Belile v. Griffin, No. 9:11-CV-0092 (TJM/DEP), 2013 WL 1776086, at *8 (N.D.N.Y. Feb. 12, 2013), report and recommendation adopted by, 2013 WL 1291720 (N.D.N.Y. Mar. 27, 2013) ("Plaintiff's mere threadbare allegations that his grievances were intercepted and discarded, without evidence to support such allegation, including any evidence that identifies which defendant, in particular, is responsible for discarding the grievances, are insufficient to excuse his failure to comply with the [Inmate Grievance Program]"). Although plaintiff does not suggest that Mid-State or Cayuga staff discarded or otherwise interfered with his April 26, 2018 grievance and other correspondence concerning the underlying claims, Mid-State and Cayuga IGPs' alleged failures to respond did not excuse plaintiff from completing the

10

grievance process.  See id.  Plaintiff does not contend, and the record does not indicate, that he filed or attempted to file an appeal to the Superintendent regarding these claims.  Thus, plaintiff's allegations that he failed to receive a response from either facility does not excuse his requirement to exhaust his claims.  See Arce v. Keane, No. 01 Civ. 2648, 2004 WL 439428, at *2 (S.D.N.Y. Mar. 9, 2004) ("An inmate's failure to appeal a grievance is not excused because he has received no response to his initial grievance").

To the extent that plaintiff contends that he did not have access to writing materials from March 22, 2015 until April 16, 2015 while housed in the dry cell, Mr. Tapia does not dispute that "inmates who are temporarily isolated in dry cell for drug watch do not generally have access to a pen and paper to draft a grievance." Tapia Decl. ¶ 7.  However, Mr. Tapia declared that, if plaintiff had informed a staff member that he wanted to file a grievance or speak with him about filing a grievance, that staff member would have relayed the message to ensure that someone from the grievance office met with plaintiff.  Id. ¶ 8.  Although plaintiff argues that he did not have access to writing materials while in his dry cell in order to file a grievance, he does not claim that he asked for writing materials from defendants and that request was denied.  See Pl. opp. at 8.  Thus, plaintiff has failed to establish that lack of access to writing materials should excuse him from the exhaustion requirement.

Insofar as plaintiff references the May 5, 2015 letter from Mr. Tapia concerning plaintiff's untimely grievance submission, this letter is in reference to the April 27, 2015 grievance received by Mid-State IGP that challenged a misbehavior report that plaintiff

11

received on March 27, 2015.  See Tapia Decl. ¶ 15, at 9; Dkt. No. 44-2 at 12.  Such letter does not refer to the alleged April 26, 2015 grievance authored by plaintiff, as defendants argue that Mid-State IGP never received that grievance.  See Dkt. No. 45 ("Def. Reply") at 6-7; Tapia Decl. ¶ 17 ("Thus, the Mid-State IGP office has no record of any grievance by plaintiff concerning his surviving claims in this case, which are based on his continued confinement in a dry cell at Mid-State while on a drug watch.").  Thus, to the extent that plaintiff references untimeliness as a means to excuse his exhaustion requirement, such argument is misplaced.

Finally, DOCCS Assistant Director of the IGP declared, and DOCCS records confirm, that plaintiff has never appealed any grievance to CORC.  See Dkt. No. 37-5 ("Seguin Decl.") ¶ 13, at 7-8.  Therefore, it is clear that plaintiff has failed to exhaust his administrative remedies, and fails to provide a sufficient excuse for the exhaustion requirement.

Defendants argue that plaintiff's claims should be dismissed with prejudice as plaintiff's time to exhaust his claim concerning the drug watch has long expired.  See Def. Mem. of Law at 13.  The undersigned agrees, and recommends that plaintiff's claims should be dismissed with prejudice as he would be barred by the three-year statute of limitations from reinstating this suit, and "[b]ecause this and any subsequently amended or reinstituted complaint is subject to dismissal for failure to exhaust administrative remedies, it would be futile to grant plaintiff leave to amend or allow him to reinstitute the suit."  Baez v. Kahanowicz, 469 F. Supp. 2d 171, 180 (S.D.N.Y. 2007); see Bridgeforth v. Bartlett, 686 F. Supp. 2d 238, 240 (W.D.N.Y. 2010) ("Since the time

12

limits for plaintiff to file an administrative appeal have long since passed, administrative remedies are no longer available to him[.]").

Accordingly, as defendants have met their burden establishing that plaintiff has failed to exhaust his administrative remedies as to his remaining claims, it is recommended that defendants' motion on this ground be granted.

### C. Personal Involvement

Defendants argue that, "[i]n the event that the Court does not dismiss the complaint in its entirety for the reasons set forth . . . above, the Amended Complaint should be dismissed as against Superintendent Colvin for lack of personal involvement." Def. Mem. of Law at 14. Although the undersigned recommends dismissal of plaintiff's claims for failure to exhaust, for the sake of completeness, the undersigned will address defendants' argument. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. See id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if

> (1) the defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

13

> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).[6]  Assertions of personal involvement that are merely speculative are insufficient to establish a triable issue of fact.  See, e.g., Brown v. Artus, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009).

Even construing plaintiff's allegations liberally, the undersigned finds that plaintiff has not adequately demonstrated that Supt. Colvin's involvement in the alleged denial of plaintiff's constitutional rights.  Nowhere in his complaint does plaintiff mention what role Supt. Colvin played in the alleged events that would give rise to any personal involvement in the action.  In his opposition, plaintiff attempts to argue that Supt. Colvin "failed to provide written approval of [his] continue[d] stay in 'Drug & Special Watches – Temporary Isolation,' after 7 days [ ] [i]n violation with Directive 4910(IV)(J)(4)(e)."  Pl. Opp. at 9.  However, plaintiff's characterization of Directive 4910 is misplaced.

---

[6] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement.  Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (summary order) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster...."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

14

Directive 4910(IV)(J)(4)(e) states, in its relevant part, that "the temporary isolation [of an inmate] may continue for up to 7 days with the written approval of the Superintendent *or his or her designee*." Directive 4910(IV)(J)(4)(e), Dkt. No. 37-4 at 15 (emphasis added). Plaintiff's amended complaint makes clear that "[e]ach [A]rea Supervisor and Watch Commander who was assigned to Mid[-]State . . . from March 23, 2015 through April 16, 2016 . . . all authorized the continuance of [p]laintiff in this "Special Watch" status[.]" Am. Compl. at 3. Therefore, as defendants note, a lieutenant and Watch Commander, acting as a designee of the Superintendent, authorized plaintiff's continued confinement on drug watch. See id.; Def. Reply at 11.

Plaintiff alleges that Supt. Colvin "was well aware of the fact that [plaintiff was] in temporary isolation for more than 7 days[ ]" because he made "rounds on numerous occasions" and spoke with him. Pl. Opp. at 9. However, this fails to demonstrate Supt. Colvin's personal involvement as plaintiff fails to specify when his interactions with Supt. Colvin occurred; nor does plaintiff indicate that he informed Supt. Colvin of his alleged unconstitutional confinement, and Supt. Colvin then failed to remedy that wrong under the second Colon factor. See Colon, 58 F.3d at 873. Further, Supt. Colvin's alleged inaction does not demonstrate that he was grossly negligent in supervising his subordinates under the fourth Colon factor. See id.

Moreover, plaintiff seems to suggest that, in his role as Superintendent, Supt. Colvin is "the supervisor of the entire facility," and thus, is personally involved in the action. Pl. Opp. at 10. However, it is well-settled that supervisory officials may not be held liable merely because they held a position of authority. See Wright, 21 F.3d at

15

501. Further, as defendants argue, Supt. Colvin, by definition, is not an area supervisor or Watch Commander. See Def. Mem. of Law at 15 (citing inter alia New York State Corr. Officers & Police Benev. Ass'n, Inc. v. Governor's Office of Employee Relations, 105 A.D.3d 1192, 1194 (2013) ("classification standard for the position of correction sergeant provides that such employees 'function primarily in the capacity of an area supervisor or Assistant Watch Commander (assistant to the shift supervisor),' working under the supervision of a correction lieutenant. As an area supervisor, a correction sergeant, among other things, supervises a group of correction officers in an assigned area. The classification standard for a correction lieutenant provides that someone with that title can function as, among other things, a watch commander or shift supervisor, whereby he or she supervises all sergeants and officers on a given shift.")). Thus, as plaintiff states that an Area Supervisor and/or Watch Commander continued his confinement, and it is clear that Supt. Colvin is not employed as either of those positions, plaintiff's argument must fail. The undersigned agrees with defendants' contention that "plaintiff cannot allege that the other defendants are at fault because they did not have the Superintendent's authorization to keep him on drug watch longer than usual while also arguing that the Superintendent is involved because he did not give the authorization." Def. Reply at 12. Thus, plaintiff has failed to establish that Supt. Colvin was personally involved in his underlying claims.

Accordingly, it is recommended that, in the alternative to dismissal for failure to exhaust, defendants' motion be granted, and all claims against Supt. Colvin be dismissed with prejudice for lack of personal involvement. See Liner v. Goord, 310 F.

16

Supp. 2d 550, 554 (W.D.N.Y. 2004) (dismissing the plaintiff's claims against for lack of personal involvement with prejudice).

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby,

**RECOMMENDED**, that defendants' Motion for Summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 37) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff Paul Ramos' amended complaint (Dkt. No. 12) be **DISMISSED** in its entirety, with prejudice; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[7]

---

[7] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

17

Dated: December 27, 2018
Albany, New York

_____
Christian F. Hummel
U.S. Magistrate Judge